**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ronald Davis, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> Bank of America Corporation, et al., <br><br> Defendants. | No. CV 12-01059-PHX-NVW <br><br> **ORDER** |

Before the Court is a Motion to Dismiss by Defendants Bank of America Corporation and Bank of America, N.A., individually and as successor by merger to BAC Home Loans Servicing LP ("B of A Defendants"). (Doc. 10.)

**I.   LEGAL STANDARD**

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To avoid dismissal, a complaint need contain only "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The principle that a court accepts as true all of the

allegations in a complaint does not apply to legal conclusions or conclusory factual allegations. *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* To show that the plaintiff is entitled to relief, the complaint must permit the court to infer more than the mere possibility of misconduct. *Id.*

Certain elements of fraud claims must satisfy a higher standard of pleading under the Federal Rules of Civil Procedure. In alleging fraud or mistake, malice, intent, knowledge, and other conditions of a person's mind may be alleged generally, but the circumstances must be alleged with particularity. Fed. R. Civ. P. 9(b). Rule 9(b) requires allegations of fraud to be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). Plaintiffs alleging fraud "must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *accord Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007).

Generally, material beyond the pleadings may not be considered in deciding a Rule 12(b)(6) motion. However, material properly submitted as part of the complaint and documents not physically attached to the complaint whose contents are alleged in a complaint and whose authenticity no party questions may be considered. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

## II. FACTS ASSUMED TO BE TRUE

In April 2000 Plaintiffs purchased a home at 1086 E. Santa Cruz Lane, Apache Junction, AZ 85219-7254, with a loan from Venture Financial Services, Inc. In early 2007, Mr. Davis began having various symptoms, including dizziness and involuntary shaking of his hands. In April 2007, Plaintiffs refinanced their outstanding mortgage debt and executed a promissory note and Deed of Trust in favor of Countrywide Home Loans for approximately $158,449.00. In early 2008, Mr. Davis was unable to continue working because of what was eventually diagnosed as Huntington's disease. In July 2008, Bank of America Corporation purchased and merged with Countrywide Financial Corporation, including Countrywide Home Loans, Inc., and Countrywide Home Loans Servicing, LP. In December 2009, Mr. Davis signed a general power of attorney giving his wife, Mrs. Davis, control over real estate transactions, banking transactions, and all other matters. In 2010, Mr. Davis was admitted to a long term care facility, and Plaintiffs could no longer afford their mortgage payments.

In the fall of 2010, Mrs. Davis contacted BAC Home Loans Servicing, LP ("BACHL") regarding a loan modification and was informed that a loan modification application would be sent to her. She was instructed to begin the loan modification process through the Home Affordable Modification Program ("HAMP") through BACHL and Home Retention Services Incorporated ("HRS"). On December 10, 2010, a Notice of Trustee's Sale of the property at 1086 E. Santa Cruz Lane, Apache Junction, AZ 85219-7254, to be held on March 18, 2011, was recorded. It identified the current trustee as Recontrust Company, N.A., and the current beneficiary as BACHL.

A loan modification application with a letter dated February 25, 2011, was sent to Mr. Davis from BACHL. Mrs. Davis quickly completed and returned the application to BACHL. Over the next several months, Mrs. Davis called to inquire regarding the status of their loan modification application and was told several times that BACHL had not received the paperwork she had previously sent and that she would have to resend it,

which she did each time. Numerous times, Mrs. Davis was told that Plaintiffs would not lose their home during the loan modification process.

The letter from BACHL dated February 25, 2011, stated:

> If your loan has been previously referred to foreclosure, we will continue the foreclosure process while we evaluate your loan for the Home Affordable Modification Program. However, no foreclosure sale will be conducted and you will not lose your home during the Home Affordable Modification Program evaluation.
>
> . . . .
>
> If your loan does not qualify for the Home Affordable Modification Program, or if you fail to comply with the terms of the Trial Period Plan, we will send you a letter explaining the reason why you do not qualify for the program. In most cases, you will have 30 days to review the reason and contact us to discuss any concerns you may have. During this 30-day review period, we may continue with the pending foreclosure action, but no foreclosure sale will be conducted and you will not lose your home.
>
> The Home Affordable Modification Program evaluation and the process of foreclosure may proceed at the same time. You may receive foreclosure/eviction notices – delivered by mail or in person – or you may see steps being taken to proceed with a foreclosure sale of you home. While you will not lose your home during the Home Affordable Modification Program evaluation, to protect your rights under applicable foreclosure law, you may need to respond to these foreclosure notices or take other actions. . . .

Plaintiffs believed that if they submitted the requested paperwork and followed the exact instructions of Defendants, they would not lose their home to foreclosure during the evaluation process. Based on that belief, Plaintiffs never looked into other foreclosure avoidance options, such as short sale.

A letter dated May 10, 2011, was sent to Mr. Davis from BACHL. It stated that BACHL had not received all of the documents it needed to complete its review of

Plaintiffs' eligibility for the HAMP. It directed Plaintiffs to fax or use an enclosed FedEx envelope to send a copy of their two most recent pay stubs not more than 90 days old indicating year-to-date earnings and a copy of their most recent bank statements for two consecutive months. The letter stated in bold, "We want you to know that if we do not receive the requested information by June 09, 2011, you will no longer be eligible for the Home Affordable Modification Program and we will resume normal activities for collecting past due loan payments." It also stated:

> If your loan has been previously referred to foreclosure, we will continue the foreclosure process while we evaluate your loan for the Home Affordable Modification Program. However, no foreclosure sale will be conducted and you will not lose your home during the Home Affordable Modification Program. If we do not receive your documents by June 09, 2011 the hold on a foreclosure sale will be released and foreclosure proceedings will resume.

**Important—Do not ignore any foreclosure notices.**

On May 25, 2011, Mrs. Davis received a knock on the door of their home and was handed a 5 Day Notice to Vacate from a representative of a third-party purchaser who claimed to have just purchased Plaintiffs' home at a trustee sale conducted earlier that day. After receiving this notice, Mrs. Davis immediately contacted BACHL/HRS and was told to immediately fax the paperwork requested in the May 10, 2011 letter and not to worry about the 5 Day Notice to Vacate. Mrs. Davis faxed the requested documentation as instructed in the letter dated May 10, 2011. She contacted the foreclosure department of BACHL and was told that Plaintiffs' home had been sold to a third-party purchaser at a trustee's sale conducted earlier that day.

Although Mrs. Davis was unable to find a home for her family to move into before having to move out of their home, a friend allowed the Davis family to stay with her for a short time while they continued their search for a suitable place to live. Mrs. Davis had to pay for people to help her family move and to rent storage space to store the

belongings they were able to take with them. Plaintiffs were forced to leave many of their possessions behind. Each of the family members has suffered stress and emotional distress as a result of being forced to leave their home.

On May 21, 2012, Plaintiffs filed a Verified Complaint alleging seven causes of action: (1) False Advertising/Consumer Fraud in Violation of A.R.S. § 44-1522, (2) Constructive Fraud, (3) Breach of Fiduciary Duty, (4) Promissory Estoppel, (5) Negligent Infliction of Emotional Distress, (6) Intentional Infliction of Emotional Distress, and (7) Negligent Misrepresentation. All of the counts are alleged against Bank of America Corporation, Bank of America, N.A., and BACHL. Counts Two, Six, and Seven are alleged against Home Retention Services, Inc., also.

## III. ANALYSIS

### A. Plaintiffs Have Not Pled Any Claim Against Bank of America Corporation.

The Verified Complaint does not allege any wrongful actions by Bank of America Corporation, only that other entities acted as its agent. Plaintiffs concede that holding companies such as Bank of America Corporation generally cannot be liable for the acts of their subsidiaries. The Verified Complaint does not allege facts to support their contention that an exception to the general rule applies here.

### B. Count One: False Advertising/Consumer Fraud in Violation of A.R.S. § 44-1522

A.R.S. § 44-1522(A) defines what constitutes an unlawful practice under the Arizona Consumer Fraud Act:

> The act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

To succeed on a claim brought under the Arizona Consumer Fraud Act, a plaintiff must show: (1) a false promise or misrepresentation made in connection with the sale or advertisement of merchandise with the intent that others rely on it, (2) the plaintiff relied on the false promise or misrepresentation, and (3) injury resulting from the false promise or misrepresentation. *Kuehn v. Stanley*, 208 Ariz. 124, 129, 91 P.3d 346, 351 (Ct. App. 2004). "[T]he misled consumer must have suffered some damage as a result of the misrepresentation." *Nataros v. Fine Arts Gallery of Scottsdale, Inc.*, 126 Ariz. 44, 48, 612 P.2d 500, 504 (Ct. App. 1980).

"'Advertisement' includes the attempt by publication, dissemination, solicitation or circulation, oral or written, to induce directly or indirectly any person to enter into any obligation or acquire title or interest in any merchandise." A.R.S. § 44-1521(1). "'Sale' means any sale, offer for sale, or attempt to sell any merchandise for any consideration, including sales, leases and rentals of any real estate subject to any form of deed restriction imposed as part of a previous sale." A.R.S. § 44-1521(7). "'Merchandise' means any objects, wares, goods, commodities, intangibles, real estate, or services." A.R.S. § 44-1521(5). A loan of money may be a "sale of merchandise" because "it is the sale of the present use of money on a promise to repay in the future." *Villegas v. Transamerica Fin'l Servs.*, 147 Ariz. 100, 102, 708 P.2d 781, 783 (Ct. App. 1985) (consumer loan held to be subject to the Arizona Consumer Fraud Act).

The Verified Complaint sufficiently alleges that BACHL made false statements. The letter from BACHL dated February 25, 2011, stated that during the HAMP evaluation no foreclosure sale would be conducted and Plaintiffs would not lose their home. It also said that if they did not qualify for a loan modification, "in most cases," they would be given thirty days for review of the decision. The letter from BACHL dated May 10, 2011, stated that during the HAMP evaluation no foreclosure sale would be conducted and Plaintiffs would not lose their home if they submitted certain documents by June 9, 2011. Plaintiffs allege Mrs. Davis faxed the requested documents

on May 25, 2011, the same day Plaintiffs' home was sold at a trustee's sale—before the HAMP evaluation was completed. Therefore, BACHL's statements that no foreclosure sale would be conducted during the HAMP evaluation were false.

However, A.R.S. § 44-1522(A) requires that the false statement be made "in connection with the sale or advertisement of any merchandise." In *Villegas*, the plaintiffs obtained a loan with an annual interest rate of 18 percent in the form of a revolving loan agreement; the loan was secured by a deed of trust on the plaintiffs' house. 147 Ariz. at 101, 708 P.2d at 782. Although the term of the loan was indefinite, if the plaintiffs made monthly payments of $353 and did not borrow any more money, the loan would be paid off in ten years. *Id.* at 102, 708 P.2d at 783. When the plaintiffs became unable to make the payments a year later, the lender told the plaintiffs that it would foreclose on its deed of trust if the plaintiffs did not accept a new loan at an annual interest rate of 19.9 percent with a loan finance fee of 9 "points" and monthly payments of $420 for a period of fifteen years. The lender did not tell the plaintiffs that the existing loan would be paid off in ten years. The Arizona Court of Appeals held that money is "merchandise," and "the transaction in this case involved a 'sale'" and an "advertisement." *Id.* It found that "[t]here is no question that plaintiffs were induced to enter into an obligation whether or not they were acquiring title or interest in the merchandise." *Id.* But it did not identify the specific characteristics of "the transaction in this case" necessary to bring it within the scope of the Arizona Consumer Fraud Act.

Here, the Verified Complaint alleges that Bank of America, N.A., agreed to be bound by certain provisions of HAMP, which include that a participating lending institution not refer any loan to foreclosure or conduct a foreclosure until a borrower is evaluated for HAMP and determined to be ineligible. As alleged, the false statements were made because of HAMP requirements, not to induce Plaintiffs to borrow more money. BACHL did not promise to postpone foreclosure during the HAMP evaluation to induce Plaintiffs to seek a loan modification. Rather, it responded to Plaintiffs' request

- 8 -

for HAMP application forms and stated the HAMP requirement that no foreclosure sale would be conducted during the HAMP evaluation. BACHL's subsequent failure to comply with the HAMP requirement does not convert its actions into making false statements "in connection with the sale or advertisement of any merchandise."

Therefore, Count One of the Verified Complaint fails to state a claim upon which relief can be granted.

### C. Count Two: Constructive Fraud; Count Three: Breach of Fiduciary Duty

Counts Two and Three of the Verified Complaint consist of "threadbare recitals of the elements of a cause of action," which are insufficient under *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009). Moreover, a claim for constructive fraud must allege a fiduciary or confidential relationship, a breach of duty by the person in the fiduciary or confidential relationship, and that the person in breach induced justifiable reliance by the other to his detriment. *Green v. Lisa Frank, Inc.*, 221 Ariz. 138, 156, 211 P.3d 16, 34 (Ct. App. 2009). Count Two attempts only to plead actual fraud, not constructive fraud.

Further, the Verified Complaint does not allege facts to support its conclusion in Count Three that "Defendants owed a fiduciary duty [to] Plaintiffs." A fiduciary relationship is a confidential relationship involving great intimacy, disclosure of secrets, or "peculiar reliance in the trustworthiness of another." *Standard Chartered PLC v. Price Waterhouse*, 190 Ariz. 6, 24, 945 P.2d 317, 335 (Ct. App. 1996). Under Arizona law, without a special agreement, a debtor-creditor relationship does not create a fiduciary duty. *See McAlister v. Citibank*, 171 Ariz. 207, 212, 829 P.2d 1253, 1258 (Ct. App. 1992). Without more, submitting personal financial information regarding eligibility for a federal loan modification program does not create a fiduciary relationship.

Therefore, Counts Two and Three fail to state a claim upon which relief can be granted.

### D.     Count Four:  Promissory Estoppel

To allege a claim for promissory estoppel, a plaintiff must allege that the defendant made a promise, the defendant should have reasonably foreseen that the plaintiff would rely on that promise, and the plaintiff actually relied on that promise to his detriment. *State ex rel. Romley v. Gaines*, 205 Ariz. 138, 143, 67 P.3d 734, 739 (Ct. App. 2003).  Arizona courts have adopted Restatement (Second) of Contracts § 90 (1981):

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

*Id.*; *see also Weiner v. Romley*, 94 Ariz. 40, 44-45, 381 P.2d 581, 584 (1963).  The promisee's action or forbearance must be a substantial or material change of position; the injury or prejudice must be "actual and substantial, and not merely technical or formal." *Weiner*, 94 Ariz. At 44, 381 P.2d at 583.

It is undisputed that BACHL made a promise not to foreclose during the HAMP evaluation process.  Because this promise is a HAMP requirement made by a lending institution, the lender should have reasonably foreseen that a borrower would rely on the promise.  The Verified Complaint alleges that Plaintiffs did not investigate other foreclosure avoidance options because they relied on BACHL's promise not to foreclose during the HAMP evaluation process.  It also alleges that Plaintiffs incurred additional expenses because they were required to leave their home with only five days' notice to vacate.

Therefore, Count Four states a claim upon which relief can be granted.

### E.     Count Five:  Negligent Infliction of Emotional Distress

The Verified Complaint alleges that "Defendants had a duty not to cause Plaintiffs' emotional distress," "Defendants breached their duty," and Plaintiffs have suffered damages, "including extreme emotional distress," as a result of the breach.  As found above, the Verified Complaint alleges Plaintiffs experienced emotional distress

caused by being forced to move out of their home because they failed to make their mortgage payments and caused by the third-party purchaser notifying them to vacate the premises within five days. Regarding actions by any of the B of A Defendants that caused Plaintiffs emotional distress, the Verified Complaint alleges only two letters saying the foreclosure sale would not occur as soon as it did. In their response to the motion to dismiss, Plaintiffs state they "are claiming direct injuries, not injuries from witnessing harm to another third person."

For claims of direct unintended emotional distress, Arizona courts have adopted the Restatement (Second) of Torts § 313 (1965). *Ball v. Prentice*, 162 Ariz. 150, 152 n.1, 781 P.2d 628, 630 n.1 (Ct. App. 1989). Section 313(1) provides:

> If the actor unintentionally causes emotional distress to another, he is subject to liability to the other for resulting illness or bodily harm if the actor
>
> (a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and
>
> (b) from facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm.

Under Arizona law, a claim for negligent infliction of emotional distress requires a showing of bodily harm, which may be satisfied by a physical injury or long-term physical illness or mental disturbance, but not by "transitory physical phenomena." *Monaco v. HealthPartners of Southern Arizona*, 196 Ariz. 299, 302-03, 995 P.2d 735, 738-39 (Ct. App. 1999). Arizona law does not permit recovery for negligent infliction of emotional distress from witnessing injury to property. *Roman v. Carroll*, 127 Ariz. 398, 399, 621 P.2d 307, 308 (Ct. App. 1980) (plaintiff was not permitted to recover damages for emotional distress she suffered from watching defendants' St. Bernard dog dismember her poodle while she walked the poodle near her home).

The Verified Complaint alleges that on May 25, 2011, Mrs. Davis was shocked when she learned that their home had been sold at a trustee's sale that morning. It alleges that all of the family members suffered stress because of the short time they had to find somewhere to live, pack, and move. It alleges that because they had to move in with a friend, they were not able to take all of their possessions. But it does not allege that any of the four Plaintiffs suffered a physical injury, long-term physical illness, or long-term mental disturbance as a result of any of the B of A Defendants' actions. It does not allege that any of the four Plaintiffs have sought medical or psychological treatment for bodily harm caused by any of the B of A Defendants' actions.

Therefore, Count Five fails to state a claim upon which relief can be granted.

**F.     Count Six: Intentional Infliction of Emotional Distress**

A claim for intentional infliction of emotional distress must allege (1) extreme and outrageous conduct by the defendant, (2) the defendant intended to cause emotional distress or recklessly disregarded the near certainty that such distress will result from his conduct, and (3) severe emotional distress occurred as a result of the defendant's conduct. *Citizen Publ'g Co. v. Miller*, 210 Ariz. 513, 516, 115 P.3d 107, 516 (2005). Under Arizona law, the trial court decides whether the alleged acts are sufficiently outrageous to state a claim for relief; it becomes a jury question only if reasonable minds could differ about whether the conduct is sufficiently outrageous. *Johnson v. McDonald*, 197 Ariz. 155, 160, 3 P.3d 1075, 1080 (Ct. App. 1999). "To recover for this tort, the plaintiff must show that the defendant's conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* (internal quotation marks and citations omitted).

Informing HAMP applicants that no foreclosure sale will be held during the evaluation process and then holding the sale during the evaluation process is careless and reprehensible, but not extreme and outrageous, especially when the applicants had five

months to prepare to vacate the property. *See id*. (given the high standard, public allegations of embezzlement against victims of alleged sexual molestation were not "beyond all bounds of decency"); *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 183 Ariz. 550, 554-55, 905 P.2d 559, 563-64 (Ct. App. 1995) (employer's actions would not "be regarded as atrocious and utterly intolerable in a civilized community" where the employer failed to promote an employee, the employee was hospitalized for severe emotional and psychological problems for three months, the employer ordered her to return to work, she was hospitalized again after one day of work, and the employer hand-delivered a letter to her in the hospital informing her that her job duties were reassigned).

Therefore, Count Six fails to state a claim upon which relief can be granted.

### G.     Count Seven:  Negligent Misrepresentation

The Verified Complaint alleges that "Defendants, in the course of business, provided Plaintiffs with false information as an inducement for Plaintiffs to comply with their demands for documents by stated dates" and "Defendants intended their false information to serve as guidance for Plaintiffs and intended that Plaintiffs thereupon rely." Arizona courts recognize the tort of negligent misrepresentation as defined by the Restatement (Second) of Torts § 552, which provides in part:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co.*, 154 Ariz. 307, 312, 742 P.2d 808, 813 (1987); *see also McAlister v. Citibank*, 171 Ariz. 207, 215, 829 P.2d 1253, 1261 (Ct. App. 1992).

But Arizona law does not recognize a cause of action for negligent misrepresentation based on promises of future conduct. *McAlister*, 171 Ariz. at 215, 829

P.2d at 1261. The alleged misrepresentation was a promise that no foreclosure sale would be conducted during the HAMP evaluation.

Therefore, Count Seven of the Verified Complaint fails to state a claim upon which relief can be granted.

## IV.   LEAVE TO AMEND

Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). Plaintiffs will be given an opportunity to amend their complaint to make clear their allegations in short, plain statements that state a plausible claim for relief. Any amended complaint must conform to the requirements of Rule 8(a), 8(d)(1), and 9(b) of the Federal Rules of Civil Procedure.

IT IS THEREFORE ORDERED that the Motion to Dismiss by Defendants Bank of America Corporation and Bank of America, N.A., individually and as successor by merger to BAC Home Loans Servicing LP (Doc. 10) is GRANTED as to Counts One, Two, Three, Five, Six, and Seven of the Verified Complaint against Defendants Bank of America Corporation and Bank of America, N.A., GRANTED as to Count Four of the Verified Complaint against Defendant Bank of America Corporation, and DENIED as to Count Four of the Verified Complaint against Defendant Bank of America, N.A.

IT IS FURTHER ORDERED that Plaintiffs may file an amended complaint by September 21, 2012.

IT IS FURTHER ORDERED that Plaintiffs show cause by September 21, 2012, why their complaint against Defendant Home Retention Services, Inc., not be dismissed for lack of prosecution.

Dated this 22nd day of August, 2012.

_____
Neil V. Wake
United States District Judge